UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PAUL CLEMENTS, et al.,

       Plaintiffs,

                                CASE No. 1:18-cv-655

v.

                                HON. ROBERT J. JONKER

RUTH JOHNSON, et al.,

       Defendants.

_____/

## OPINION AND ORDER DENYING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND DECLARATORY RELIEF

### INTRODUCTION

"All politics is local," Tip O'Neill, a former Speaker of the United States House of Representatives, is often quoted as saying.[1]  But what type of local—city or township? Plaintiff Paul Clements says that confusion among voters signing his nominating petition left him nine signatures short of getting his name on the ballot as a Democratic Party candidate for United States Representative in Michigan's 6th Congressional District.  The potential for confusion did not prevent four other Democratic candidates from qualifying for the ballot with the required signatures.  Mr. Clements asks this Court to intervene on an expedited and emergency basis to require state election authorities to include his name on the ballot even though he failed to qualify under state law.  Mr. Clements has failed to make a convincing showing that the Court should re-write state election rules in the middle of the game.  Accordingly, Plaintiff's motion for preliminary relief is **DENIED.**

### FACTUAL AND PROCEDURAL POSTURE

#### 1.  *Statutory Framework*

---

[1] John Bartlett, *Bartlett's Familiar Quotations* 789 (17th ed. 2002).

The parties agree on the statutory framework at issue.  In Michigan, candidates for the United States House of Representatives are nominated in primary elections held in the August before the November general election.  *See* MICH. COMP. LAWS §§ 168.132, 168.534.  To appear on the official primary ballot, a candidate must submit a nominating petition.  MICH. COMP. LAWS § 168.133.  In this instance, Mr. Clements was required to file a petition containing at least 1,000 and no more than 2,000 signatures of qualified and registered electors with Michigan's Secretary of State.  MICH. COMP. LAWS §§ 168.544f, 168.133.

State law prescribes the different forms of permissible nominating petitions, including the paper and font size as well as certain wording.  Mr. Clements' signatures were gathered on a countywide form, and involved the interplay of both MICH. COMP. LAWS § 168.544c and § 544d.  Among other things, § 544d expressly requires that the countywide form "provide for identification of the city or township in which the person signing the petition is registered."

The countywide form contains a heading stating "We, the undersigned, registered and qualified voters of the County of . . .", and then includes blanks for the candidate's name, address, party, office being sought, term end date, district, and date of the primary election.  (See ECF No. 11-2, PageID.608).  The petition then has blank rows for signatures of electors.  Next to the signature, the elector must provide a printed name, street address, zip code, and date.  Finally,  under the right hand column, the elector must "INDICATE CITY OR TOWNSHIP IN WHICH REGISTERED TO VOTE."  Space was provided for the name of that city or township.  An elector may also check one of two boxes to indicate whether the listed jurisdiction is a city or a township.  A sample of that portion of the nominating petition appears below:

```
INDICATE CITY OR TOWNSHIP IN WHICH
            REGISTERED TO VOTE
CITY OF         ☐
TOWNSHIP OF ☐
```

After obtaining the signatures with the required information, the petition circulator signs and dates the petition.

### 2. Mr. Clements' Nominating Petitions

Mr. Clements filed his nominating petitions with 1,346 signatures in April 2018. An initial canvas was then conducted by the Bureau of Elections under MICH. COMP. LAWS § 168.552(8). That review resulted in 198 of the 1,346 signatures being invalidated.  In other words, after the initial canvass Mr. Clements was still above the 1,000 signature threshold.

According to Plaintiffs' Amended Motion, on April 27, 2018, Andrew Davis, an individual affiliated with a rival Democratic Party candidate's campaign filed a challenge to a number of signatures on Mr. Clements' petitions. Some of these challenges alleged that certain signatures on Mr. Clements' nominating petition must be invalidated for checking the wrong jurisdictional box.

Mr. Clements filed a response to the challenge, and the Bureau of Elections reviewed the challenges.  Of course, an elector who provides the correct jurisdiction name, and correctly identifies it as a city or township won't be invalidated.  Moreover, under MICH. COMP. LAWS § 168.552a(1), there is "a limited safe harbor for signers who write the names of jurisdictions that could be either a city or township, yet fail to check either the city or township box, or who

3

make a check in both boxes [because] [i]n both of these scenarios 'the designation of city or township has not been made'".  (ECF No. 8-5, PageID.514).  There is no safe harbor, however, for those electors who only check one box if that box turns out to be wrong.  In this scenario, the signature is invalidated.

Based on these rules, the Bureau of Elections invalidated an additional 157 signatures. Of these signatures, 102 were invalidated because the elector checked the wrong box in the petition's right hand column.   The additional invalidations left Mr. Clements with only 991 qualifying signatures on his nomination petitions.   The Bureau then issued a staff report, as required by Michigan election law, that recommended Mr. Clements' nominating petition be determined insufficient for the lack of at least 1,000 valid signatures.  Mr. Clements submitted a letter to the Board of State Canvassers challenging the statutory scheme as an unconstitutional trap for the unwary.  The Board of State Canvassers met on June 1, 2018, rejected Mr. Clements' arguments, and voted unanimously to declare the petition insufficient.   This means that Mr. Clements' name will not appear on the August 2018 primary ballot.

The Director of Elections implemented this decision and certified the names of candidates qualified to appear on the primary ballot.  Defendants contend that ballots have already been approved for printing, that the printing of ballots has already commenced, and that absentee voter ballots have already been delivered to the local boards of county election commissioners for distribution to those voters.  Defendants say further that the August primary ballots must be available for distribution to absentee voters no later than June 23, 2018, which is tomorrow.

## LEGAL STANDARD

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, but a clear showing, carries the burden of persuasion."   11A

CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2948 (3d ed. 2013); see also *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008) (noting that a preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief"). A court addressing a motion for a preliminary injunction must consider four factors: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities favors the plaintiff; and (4) that the requested preliminary injunction is in the public interest. *Winter*, 555 U.S. at 20.[2] The Sixth Circuit has held "these are factors to be balanced, not prerequisites to be met." *Southern Glazer's Distributors of Ohio, LLC v. Great Lakes Brewing Company*, 860 F.3d 844, 849 (6th Cir. 2017). However, "the proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion." *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000).

### 1. *Likelihood of Success*

The first factor for the Court to weigh is whether Plaintiffs have demonstrated a likelihood of success on the merits. A movant is not required to prove the case in full, but a plaintiff must show "more than a mere possibility of success." *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 543 (6th Cir. 2007) (quotations omitted). The plaintiff must point to questions as to the merits that are "so serious, substantial, difficult, and doubtful as to make them a fair ground for litigation[.]" *Id.* (quotations omitted).

---

[2] In addition to addressing these four factors, Defendants argue the motion should be denied under the doctrine of laches. Timing is always a fair consideration in the overall equitable mix of factors on a preliminary injunction motion, but the Court does not find laches to be a standalone basis for denying relief in this case.

The United States Constitution "accords special protection for the fundamental right of voting."  *Northeast Ohio Coalition for Homeless v. Husted*, 696 F.3d 580, 591 (6th Cir. 2012). Courts apply different standards of scrutiny depending on the burden of the right to vote.  "While a rational basis standard applies to state regulations that do not burden the fundamental right to vote, strict scrutiny applies when a state's restriction imposes 'severe' burdens."  *Id.* at 592. "For the majority of cases falling between these two extremes" courts apply the "flexible" test set out by the Supreme Court in *Anderson v. Celebrezee*, 460 U.S. 780 (1983) and *Burdick v. Takushi*, 504 U.S. 428 (1992).  *Husted*, 696 F.3d 580 at 592.

> Under the *Anderson–Burdick* test, the court must first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate.  Second, the court must identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule. Finally, it must determine the legitimacy and strength of each of those interests and 'consider the extent to which those interests make it necessary to burden the plaintiff's rights.

*Michigan State A. Phillip Randolph Institution v. Johnson*, 833 F.3d 656, 662 (6th Cir. 2016) (internal citations and quotation marks omitted).

The Court finds Plaintiffs have not shown a likelihood of success under the *Anderson-Burdick* test.  The burden on those electors signing a countywide nominating petition was perhaps more than slight, but far from severe.  The fact that four other Democratic candidates were able to meet the 1,000 signature requirement with the same countywide petition underscores this conclusion.  Electors simply needed to provide basic information sufficient to verify their residence and voter status in the relevant jurisdiction.  The same geographical name for both a city and a township certainly creates a risk of confusion, but most people know whether they pay township or city taxes.  And electors with any question have several options.

6

They can call the Secretary of State or check the Secretary of State's website to confirm registration. They can simply ask the individual circulating the petition what to do in case of doubt. Presumably a circulator motivated to help the candidate would be well-enough informed to advise the elector to check no box, thus qualifying for the safe harbor, rather than guess wrong and invalidate the signature.

The Court finds the statutes are minimally burdensome, nondiscriminatory, and reasonably calculated to advance legitimate regulatory interests. Some basic identifying information is needed to confirm the elector is qualified to sign. The jurisdictional designation helps speed the process and avoid mistakes. The statutory safe harbor diminishes this administratively ease somewhat, but it is a permissible policy decision by the state legislature as long as all candidates play by the same rules and no one class of candidates is systematically favored or harmed. Moreover, by permitting the incomplete responses to count, the safe harbor actually reduces the burden on those signing nominating petitions, rather than increases it. With the statutory safe harbor in effect, only affirmatively erroneous responses are invalidated.

The Court determines that Plaintiffs have not made a convincing showing of a probability of success under *Anderson–Burdick*. Plaintiffs' citation to *Molinari v. Powers*, 82 F. Supp.2d 57 (E.D.N.Y 2000) is not persuasive. The case did deal with a so-called "town / city trap" *Id.* at 71. But there are critical distinctions. First of all, the parties in that case stipulated that the New York statute imposed an undue burden. *Id.* The New York statute also operated in a discriminatory way to help candidates favored by party leadership and to hurt insurgents. Finally the "town / city trap" was only one of a series of requirements that operated together to burden voters and to favor leadership-sponsored candidates. There is no such evidence here. Accordingly, the Court finds that Plaintiffs cannot show a likelihood of success on the merits.

### 2. *Likelihood of Irreparable Harm*

"[A] finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzalez v. Nat'l Bd. Of Medical Examiners*, 225 F.3d 620, 625 (6th Cir. 2000). While the Court has found there is no likelihood of success in this case, the Court will nevertheless proceed to consider the remaining factors. Here, the likelihood of irreparable harm points in Plaintiffs' favor but not in a dispositive way. It is true that without an injunction Mr. Clements name will not be on the official primary ballot under the Democratic Party heading this August. And that will hurt his chances of winning. But nothing stops Mr. Clements from competing for write-in votes. And nothing prevents his supporters from voting for him as a write-in candidate. In a five-way primary race, a write-in campaign is certainly a high hurdle, but not necessarily an insurmountable one.

### 3. *Balance of Equities*

In order to obtain injunctive relief, Plaintiffs "must establish that . . . the balance of equities tips in [their] favor[.]" *Winter,* 555 U.S. at 20. The balance here does not favor Plaintiffs because they have not demonstrated a likelihood of success and Defendants have a valid interest in the enforcement of statutes and regulations that assist the Bureau of Elections in carrying out its duties. Moreover, there are other interests at play, including those of non-parties. For example, four candidates for nomination as the Democratic Party candidate in Michigan's 6th Congressional District did meet the state election requirements and qualify for the printed ballot. They and their supporters followed the rules and have a legitimate expectation that a judge won't step in and change the rules now in favor of their competitor who did not follow the rules. Furthermore, as both parties agree, "[t]iming is everything." *Crookston v. Johnson*, 841 F.3d 396, 398 (6th Cir. 2016). While August is several weeks away, the hour is already late.

Indeed, ballots have already been approved, and must be available for distribution as early as tomorrow.  An order in Plaintiff's favor would require Defendants and non-parties alike to hurriedly reprint ballots for approval and distribution to absentee voters.  "[C]ourts will not disrupt imminent elections absent a powerful reason for doing so." *Id.* The Court does not see a powerful reason here.

### 4. *Public Interest*

"[I]t is always in the public interest to prevent the violation of a party's constitutional rights." *Jones v. Caruso*, 569 F.3d 258, 278 (6th Cir. 2009) (quotation marks and citation omitted).  "However, if the regulation in question is likely to be deemed constitutional, then public interest will not be harmed by its enforcement."  *Id.* (quotations marks and citation omitted).  Thus the lack of a likelihood of success in this case means this factor weighs in Defendants favor.  Furthermore the public has an interest in ensuring that the Bureau of Elections may easily and speedily confirm the validity of signatures on nominating petitions, as well as an interest in avoiding the time and expense that may occur from the reprinting of ballots and the delay of sending out ballots to absent voters and, furthermore, in avoiding the confusion that may result if corrected ballots must be sent out.  Moreover, all candidates and voters have a common interest in knowing that clear rules will be followed and enforced throughout the contest and not changed by a court in the middle of the game.  All this, again, weights against emergency relief.

### CONCLUSION

In just a few hours, the next steps in the 2018 primary season will begin in Michigan when official primary ballots must be available for distribution to absentee voters.  Mr. Clements' name will not be on the printed ballot as a Democratic candidate because he did not

follow the rules that four other Democrats did to qualify.  This means Mr. Clements and his supporters will have to rely on a write-in campaign this year, or choose to support one of the other four Democratic candidates.  That's the inevitable result of reasonable statutory rules enforced by a unanimous State Board of Canvassers and applied equally and fairly to all contenders.

Plaintiffs have failed to establish a basis for this Court to interfere with that in the middle of the contest.

**ACCORDINGLY, IT IS ORDERED:**

1. Defendants' Amended Motion for Leave to File Excess Pages (ECF No. 13) is **GRANTED.**

2. Plaintiffs' Motion for a Preliminary Injunction and Declaratory Relief is **DENIED.** Plaintiffs, of course, may continue their challenge to the Michigan statutes in the ordinary course of litigation.

Date:   June 22, 2018              /s/ Robert J. Jonker
                                   ROBERT J. JONKER
                                   CHIEF UNITED STATES DISTRICT JUDGE